UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NUMBER: 3:11-CR-104 JD |
| | ) | |
| JEFFREY M. SCOTT | ) | |

## OPINION & ORDER

Defendant Jeffrey Scott is charged with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and his case is set for jury trial on February 19, 2013. At trial, the government intends to introduce expert testimony as to whether the subjects depicted in the allegedly pornographic images were, in fact, minors under the age of 18. In an order dated July 3, 2012, the court asked the government to submit a filing elaborating on the anticipated expert testimony and on the legal basis for its admissibility. [DE 65]. In response, the government submitted a notice identifying the proposed expert, Dr. Thomas Soisson, and suggesting that the court hold a *Daubert* hearing to evaluate Dr. Soisson's proposed testimony. [DE 66]. On November 7, 2012, the court held that hearing. [DE 74]. After a transcript was prepared, the government filed a supplemental brief supporting the admission of Dr. Soisson's testimony. [DE 77]. The defendant was given the opportunity to respond, but declined to do so. This issue is ready for a preliminary adjudication, and the court resolves it as follows.

## DISCUSSION

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and subsequent cases, the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, whether scientific or otherwise. *See Kumho Tire Co., Ltd. v.*

1

*Carmichael*, 526 U.S. 137 (1999). The proponent of expert testimony bears the burden of establishing that the admissibility requirements are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171 (1987); Fed. R. Evid. 104(a). Rule 702 of the Federal Rules of Evidence, as amended in 2000 and 2011 to better reflect the state of the law on the subject, sets out those admissibility requirements. Expert opinions are admissible where:

(1)   The witness is qualified as an expert by knowledge, skill, experience, training, or education (*see* Rule 702 introductory phrase);

(2)   The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue (*see* Rule 702(a));

(3)   The testimony is based on sufficient facts or data (*see* Rule 702(b));

(4)   The testimony is the product of reliable principles and methods (*see* Rule 702(c)); and

(5)   The expert has reliably applied the principles and methods to the facts of the case (*see* Rule 702(d)).

Rule 702 is a conjunctive test, so expert testimony must meet all five requirements to be admissible. Failure on any prong is fatal to admissibility. Each requirement has been thoroughly explored in the case law, and each requires a separate analysis, although the last two are closely related and both deal with the popular *Daubert* factors and their progeny. The court examines the testimony of the plaintiff's proposed expert, Dr. Thomas Soisson, under each prong of the test in order.

**A.   Whether Dr. Soisson is qualified.**

The first requirement is that any proposed expert be qualified by knowledge, skill, experience, training, or education. *See* Fed. R. Evid. 702 (introductory phrase). "'[E]xtensive academic and practical expertise' in an area is certainly sufficient to qualify a potential witness as an expert[.]" *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (quoting *Bryant v. City of Chi.*, 200 F.3d 1092, 1098 (7th Cir. 2000)). So too is extensive and specialized experience, even

where it comes without formal schooling. *Id.*; *Kumho Tire Co.,* 526 U.S. at 153 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *see also* Advisory Committee Notes to Rule 702 ("In certain fields experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."). No matter the path to qualification, however, a witness may only offer an expert opinion within the field as to which he or she is expert-qualified. *Jones v. Elec. Co.*, 188 F.3d 709, 723 (7th Cir. 1999). That means there are two questions at issue: (1) whether the potential witness is qualified as an expert and (2) whether the potential witness's expected testimony falls within his field of expertise.

Dr. Soisson is qualified as an expert by education and experience. The government submitted Dr. Soisson's curriculum vitae along with its first filing on the subject. [DE 66-1]. Dr. Soisson graduated from medical school in 1985 and completed his residency in 1988. After completing a tour in the Army Medical Corps in 1991, Dr. Soisson joined Michiana Pediatrics as a partner. He has practiced there ever since. As Dr. Soisson explained it, practicing in the field of pediatric medicine necessarily involves familiarity with the different stages of growth and development through with a "normal" child progresses, because a failure to progress in a normal way is often symptomatic of disorder or disease. In Dr. Soisson's practice experience, he estimates that he has seen and treated between 20,000 and 30,000 children, ranging in age from newborn to 21 and, occasionally, older.

At the hearing held on November 7, 2012, defense counsel stipulated to Dr. Soisson's expertise in the fields of "pediatrics and children." [DE 76 at 10]. This court would extend that expertise into the more particular area of childhood growth and development. Dr. Soisson testified: that he received instruction with respect to childhood development during his education and residency; that education on developmental changes makes up a large part of his yearly continuing

education requirement; and that he regularly consults with textbooks on the subject, in addition to journals such as those published by the American Academy of Pediatrics and the American Academy of Family Practice. [DE 76 at 14-15]. Since Dr. Soisson's anticipated testimony concerns childhood growth and development, the court finds that he is expert-qualified in the necessary field by education and experience.

**B.      Whether Dr. Soisson's testimony will be helpful to the jury.**

The second requirement is that the expert's scientific, technical, or other specialized knowledge should help the trier of fact to understand the evidence or to determine a fact in issue. *See* Fed. R. Evid. 702(a). This, the Supreme Court has explained, is essentially a relevance inquiry. *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 613 (7th Cir. 1993) (citing *Daubert*, 509 U.S. at 591). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citing 3 WEINSTEIN & BERGER ¶ 702[02], p. 702–18). *See also United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702 – and another aspect of relevancy – is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute"). In the child pornography context, courts have particularly emphasized the importance of a case-by-case inquiry into "whether the age of a model in a child pornography prosecution can be determined by a lay jury without the assistance of expert testimony[.]" *United States v. Katz*, 178 F.3d 368, 373 (5th Cir. 1999); *see also United States v. Haymond*, 672 F.3d 948, 960 (10th Cir. 2012). In a case in which all of the images depict subjects who are clearly prepubescent, for example, expert

testimony may not be necessary; a lay jury can observe for itself that those subjects are minors.[1] But in a case where the images depict pubescent or post-pubescent subjects who may or may not be over the age of 18, expert testimony may be not only helpful, but necessary to the government's case. *United States v. Riccardi*, 405 F.3d 852, 870 (10th Cir. 2005).

Dr. Soisson's anticipated testimony passes the Rule 702(a) test. Dr. Soisson is expected to testify with respect to 200-300 images [DE 76 at 6], consisting of those images for which Dr. Soisson feels he can say with a reasonable degree of medical certainty that the subject depicted is under 18. The images about which he will testify include depictions of prepubescent, as well as pubescent, subjects. The case law therefore suggests that Dr. Soisson's testimony may not be entirely "necessary" with respect to each image, but the court is convinced that it will be helpful to the jury. Testimony about the age of the subjects depicted goes directly to the jury's determination of one of the elements of the charged offense – whether or not the subjects were minors – and, based on the court's observation of the example images presented at the hearing, those judgments will in many cases be difficult for laypersons to make unassisted. The court does note, however, that the parties mentioned a potential stipulation as to the age of individuals depicted who appear to be "clearly prepubescent." While the court will allow Dr. Soisson to testify with respect to those images if necessary, it would greatly streamline the trial process if the parties stipulated to the minor status of those individuals instead.

---

[1] To say that the testimony is not "necessary," as cases like *Katz*, *Haymond*, and *United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005), suggest with respect to depictions of clearly prepubescent subjects, is not to say that it cannot be "helpful" with respect to those same images. Thus, nothing about those cases prevents the court from finding that the requirements of Rule 702(a) are met, even with respect to testimony regarding clearly prepubescent subjects.

## C. Whether Dr. Soisson's testimony is based on sufficient facts or data.

The third requirement is that the expert's opinion must be based on sufficient facts or data. Fed. R. Evid. 702(b); *see also Kenosha v. Heublein*, 895 F.2d 418, 420 (7th Cir. 1990) ("experts' opinions are worthless without data and reasons"); *Elliott v. CFTC*, 202 F.3d 926, 934 (7th Cir. 2000). There are two sides to the "sufficient facts and data" issue. On one hand, an expert should take into account all of those facts which are necessary to support his findings, not just some of them, and he cannot conveniently disregard contrary evidence. On the other hand, a party cannot disqualify the other side's expert simply by disputing the facts upon which he relied. The Advisory Committee Note to Rule 702 sets out the parameters:

> Subpart [b] of Rule 702 calls for a quantitative rather than qualitative analysis. The amendment requires that expert testimony be based on sufficient underlying "facts or data." The term "data" is intended to encompass the reliable opinions of other experts. See the original Advisory Committee Note to Rule 703. The language "facts or data" is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence. *Id.*
>
> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

In short, the question is whether the expert considered enough information to make the proffered opinion reliable. *See* Charles Alan Wright & Victor James Gold, FED. PRAC. & PROC. § 6266, at 41 (Supp. 2004). "[T]his inquiry examines only whether the witness obtained the amount of data that the methodology itself demands." *United States v. Crabbe*, 556 F.Supp.2d 1217, 1223 (D. Colo. 2008). The question is whether a factual foundation is present upon which the expert could have based his conclusions, or whether one or more logically necessary foundational facts are absent. For the purposes of this analysis, the court temporarily assumes that the scientific principles used by the

expert are valid, asking only whether the expert considered sufficient data to support invoking those principles.[2]

In this case, the "facts" on which Dr. Soisson has based his conclusions are simply the images which are alleged to be child pornography. In theory, that could present some issues, since not every image will display the subject in such a way as to make visible, or sufficiently defined, the various indicators on which Dr. Soisson relies in determining whether the subject is a minor. For example, Government Exhibit Four – a letter by Drs. Arlan Rosenbloom and James Tanner concerning the efficacy of the latter's "Tanner Staging" method for determining pubertal progress, which is one of the methods employed by Dr. Soisson – notes that "non-standardized and, thus, unsuitable photographs" make the method considerably less reliable. The government has avoided any such problems, however, by limiting Dr. Soisson's testimony to those images which *do* provide enough information for him to form an opinion with a reasonable degree of medical certainty. [DE 76 at 38]. Images that did not provide enough information to support a conclusion were discarded, as were images for which Dr. Soisson otherwise could not say with a reasonable degree of medical certainty whether the subject was a minor. [DE 76 at 37-38]. Based on that, and assuming the images about which Dr. Soisson will testify at trial are generally similar to those about which he testified at the *Daubert* hearing, the court is satisfied that his conclusions are based on sufficient facts and data.

---

[2] The court is aware that some secondary sources believe the Rule 702(b) inquiry is the appropriate time to consider whether the proposed expert adequately accounted for potential alternative explanations. *See, e.g.*, FED. PRAC. & PROC. § 6266 (an expert opinion can be challenged under Rule 702(b) "because the expert failed to consider facts or data that might lead to alternative theories of causation"). But most courts consider the question of whether the expert has adequately considered alternative causes or explanations to go more to the Rule 702(d) *Daubert* inquiry concerning the reliability of the expert's application of scientific principles and methods to the case. *See, e.g., Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994); *Ambrosini v. Labarraque*, 101 F.3d 129 (D.C. Cir. 1996). This court prefers the latter approach.

**D.      Whether Dr. Soisson's testimony is the product of reliable principles and methods.**

The fourth requirement is that the testimony must be the product of reliable principles and methods. *See* Rule 702(c). Along with Rule 702(d), this is one of the requirements directly derived from the Supreme Court's decision in *Daubert*, and it is intended to guarantee that the principles and methods which the proposed expert relies are independently reliable. "A 'principle' is a theory that can be used to explain the meaning of observations." FED. PRAC. & PROC. § 6266. "While 'principle' refers to the theories an expert employs to explain observed facts, 'method' refers to how the expert derives those theories." *Id*. Dr. Soisson's testimony is partially based on "scientific" principles, and partially based on more basic observables learned through years of practical experience.

The most scientific principle on which Dr. Soisson relies is the Tanner Method, a rubric for assessing the growth and development of children throughout puberty. While *Daubert* and subsequent cases have laid out a variety of factors which often prove helpful in assessing a principle's scientific reliability, the inquiry is necessarily fact-dependent and flexible. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012). As the Supreme Court has noted, "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But . . . the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co.,* 526 U.S. at 141 (emphasis original); *cf. Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) (holding that lack of peer review or publication was not dispositive where the principle was supported by "widely accepted scientific knowledge"); *Tyus v. Urban Search Mgmt.*, 102 F.3d 256 (7th Cir. 1996) (noting that the factors mentioned by the Court in *Daubert* do not neatly apply to expert testimony from a sociologist). The non-exclusive list of *Daubert* reliability

factors includes: (1) Whether a principle can be (and has been) tested; (2) Whether it has been subjected to peer review and publication; (3) Whether, in respect to a particular principle, there is a high known or potential rate of error; and (4) Whether the principle enjoys general acceptance within a relevant scientific community. *Kumho Tire Co.*, 526 U.S. at 149-50 (citing *Daubert*, 509 U.S. at 592–594).

The Tanner method, when properly employed, satisfies the *Daubert* test. The method grew out of an article published by Drs. James Tanner and W.A. Marshall: *Variations in the Pattern of Pubertal Changes in Boys*, 45 ARCHIVES OF DISEASE IN CHILDHOOD 13 (1970). [Government Exhibit 3]. Written as a companion piece to an earlier study on a population of girls, the authors compiled data on the progression of 228 boys into and through puberty by studying whole-body photographs, taken at three-month intervals and arranged consistent with the prevailing scientific standards of the day. The authors then classified the pubertal changes depicted in the photographs into five stages of development. More precisely, they classified the changes according to two separate five-stage scales: one for the development and growth of the genitals and one for the development and growth of the pubic hair. *Id.* at 16. Since then, those stages (Tanner Stages I-V) have been used extensively in the field of pediatrics to assess the "normalcy" of a child's growth and development, and even in court cases like this one to determine whether subjects depicted in a pornographic image are minors. There is no dispute that the Tanner stages are generally accepted for the former use, and Dr. Soisson testified as to its application within pediatrics at the hearing. [DE 76 at 20]. Whether they are generally accepted for use in court testimony is a more complicated question.

On one hand, while there is not a great deal of published and binding authority, the use of

Tanner staging by expert witnesses in child pornography cases seems to be widespread, and it often passes without comment. *See, e.g., United States v. Cameron*, 699 F.3d 621, 634 (1st Cir. 2012) (noting, without taking issue, an expert's Tanner testimony); *United States v. Hilton*, 386 F.3d 13, 15 (1st Cir. 2004); *United States v. Fuller*, 77 Fed. Appx. 371, 376 (6th Cir. 2003) (pediatric endocrinologist testified that images depicted minor females at or below Tanner Stage IV); *United States v. Davis*, 41 Fed. Appx. 566, 573 (3d Cir. 2002) (acknowledging use of the Tanner scale by a postal inspector to determine that a subject was a minor); *United States v. Katz*, 178 F.3d 368, 373-74 (5th Cir. 1999) (holding that it was not an abuse of discretion for the district court to allow an expert to testify about the Tanner scale, so long as it was within that expert's realm of expertise); *United States v. Long*, No. 95–6647, 1997 WL 130079 at *3 (6th Cir. Mar. 19, 1997) (finding no error in allowing medical doctor utilizing Tanner scale and experience to testify regarding ages of models used in sexually explicit material). On the other hand, at least one court seems to have questioned the application of what it referred to as the "reverse Tanner scale" in a child pornography case. *See United States v. Todd*, 964 F.2d 925, 931 n. 8 (9th Cir. 1992) (no explanation of how the "reverse Tanner scale" differs from the Tanner scale is given). Moreover, Dr. Tanner himself has expressed concern at the use of his scale in criminal cases, particularly when a witness uses the scale not to estimate a stage of development but to attempt to pinpoint chronological age. [Government Exhibit 4]. *See also United States v. Pollard*, 128 F.Supp.2d 1004, 1122-23 (E.D. Tenn. 2001) (cautioning against the use of the Tanner scale, alone, to "age" a victim, particularly where the images in question do not clearly depict the necessary physical indicators).

The court's impression is that there is no *Daubert* problem with the Tanner staging method, viewed independently as a scientific principle. The concept is generally accepted within the

pediatrics community; it originated in testable and peer-reviewed research; and determining the Tanner stage into which an individual falls – provided a proper examination can be done by an informed observer – is a relatively simple process with a low rate of error, since it is basically an exercise in matching. Where the occasional court – and where Dr. Tanner himself – takes issue is not with the reliability of the method in the general sense, but with the reliability of the way in which expert witnesses sometimes attempt to apply the method to the facts of a given case, such as when a witness mistakenly tries to pinpoint an individual's chronological age. But that is a separate issue which the court will discuss when it addresses Rule 702(d).

Beyond the Tanner method, Dr. Soisson also relies on a variety of less scientific concepts, born out of his many years of experience in pediatrics. These include observing the subject's facial characteristics, muscular development, and general body habitus, as well as the degree of fat on the subject. [DE 76 at 18]. Although the *Daubert* gatekeeping function applies to all kinds of expert testimony, and not just scientific testimony, *see Kumho Tire Co.*, 526 U.S. at 152, the *Daubert* factors themselves were designed in the scientific context and thus do not match up neatly in every case. *Id*. Still, the court is not without guidance on the issue. Pediatricians have been allowed to testify on the basis of their experience in similar cases. *See, e.g., United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001) (finding no abuse of discretion in district court's decision to allow "experienced pediatrician" to testify that subjects depicted were minors); *Long*, 1997 WL 130079 at *3 (permitting testimony by a doctor utilizing the Tanner scale along with experience); *United States v. Broyles*, 37 F.3d 1314, 1316 (8th Cir. 1994) (pediatric endocrinologist permitted to testify as to age of subjects). Moreover, Dr. Soisson testified at the *Daubert* hearing that his estimates of age based on his experience with tens of thousands of children are typically quite accurate; that the indicators on

which he, in his experience, relies are commonly used within the pediatrics field, even if not scientifically quantifiable; and that being able to roughly ascertain the age of a child based on these indicators is considered a basic necessity to the practice of pediatrics. [DE 76 at 40-41]. The court is satisfied that the principles and methods on which Dr. Soisson relies – the Tanner method used in concert with the less scientific measurables with which he has become familiar through his extensive experience – are reliable.

E.     **Whether Dr. Soisson has reliably applied the principles and methods to the facts of the case.**

The final question the court must ask is whether the expert has reliably applied his principles and methods to the facts of the case. *See* Rule 702(d). This is where the court assesses the manner in which the expert has attempted to bring it all together; the question is whether he has "bridged the analytical gap" between the mere existence of his principles and methods in theory and his application of them to the specific facts of the case before the court. *See Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 536 (7th Cir. 2005) (partially vacated on unrelated grounds, 448 F.3d 936); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). In addition to the non-exhaustive *Daubert* factors already mentioned, courts have found additional factors to be particularly relevant to this analysis:

(1)    Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. *See General Elec. Co.*, 522 U.S. at 146.

(2)    Whether the expert has adequately accounted for obvious alternative explanations. *See Claar*, 29 F.3d 499.

(3)    Whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997). *See also Kumho Tire*, 526 U.S. at 152 (*Daubert* requires the trial court

to assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field").

Finally, as always in the Rule 702 analysis, the court is free to consider concerns specific to the facts of the case at hand.

The court is preliminarily satisfied that Dr. Soisson's application of his principles and methods to the case is reliable. The ruling is preliminary because the court has only seen Dr. Soisson apply his principles and methods to a series of sample images at the *Daubert* hearing, and not to each of the images which will be presented at trial. But, assuming his testimony with respect to the remaining images proceeds in much the same way, it will be admissible.

First, Dr. Soisson avoids many of the pitfalls attendant to testimony based on the Tanner scale by not attempting to pinpoint a subject's chronological age. Pinpointing age is difficult because individuals reach each successive Tanner stage of development at different chronological ages. For example, an individual might enter Tanner Stage IV for pubic hair development shortly after turning 12, or he might not enter it until he was nearly 17. [Government Exhibit 3 at 16]. But using the Tanner stages to assist in drawing broader conclusions about whether a subject is over or under 18 can be done in a more reliable fashion. For example, while it is difficult to pinpoint precise chronological age, for an individual in Tanner Stage I or II (and perhaps III) of genital development to be over the age of 18 would be almost unheard of, absent some other medical condition that would make itself known through various other symptomatic manifestations. [Government Exhibit 3 at 16; DE 76 at 22-24, 36]. Dr. Soisson can therefore reliably consider the Tanner scale as evidence that such individuals are minors. Moreover, in consultation with the government, Dr. Soisson has discarded from his testimony images of subjects which he is not "fairly certain" are younger than 18. [DE 76 at 17, 26-27]. In that way, the potential reliability problems associated with

use of the Tanner scale have been addressed.

Second, Dr. Soisson adequately "bridges the gap" between his principles and methods and the facts of the case by explaining, in detail, what observable characteristics about a subject are relevant to his determination and what those characteristics lead him to conclude. The Tanner scale is therefore not used in isolation, but with constant reference to the additional indicia of maturation Dr. Soisson has learned through his decades of experience. [DE 76 at 28-30]. Dr. Soisson also adequately explained how he is able to discount possible alternative explanations – including other health disorders which might delay the onset of puberty – by emphasizing how rare those disorders are and by noting that such disorders are almost always accompanied by other visible symptoms which would allow him to conclude that he was looking at an instance of abnormal development. [DE 76 at 35-36]. *See Claar*, 29 F.3d 499. For all of the foregoing reasons, his application of the relevant principles and methods appears sufficiently reliable.

## CONCLUSION

In conclusion, the court finds preliminarily that Dr. Soisson's expert testimony is admissible. Provided that his testimony at trial proceeds in much the same way as did his testimony at the *Daubert* hearing, it passes the Rule 702 and *Daubert* tests. The government's request to admit such testimony [DE 66] is therefore conditionally **GRANTED**. That said, the court continues to encourage the parties to attempt to stipulate to the minor status of those subjects who are "clearly prepubescent," as it would undoubtedly streamline the conduct of the trial. The court's preference is that any such stipulation be prepared before the final pretrial conference currently scheduled for Thursday, February 7, 2013 at 4:00 pm.

SO ORDERED

ENTERED:  January 23, 2013

                                                                    /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court